IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| OHIO INVESTORS 2017, LLC, | ) | CASE NO. 3:20-cv-02023 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR PROFESSIONAL MALPRACTICE, GROSS NEGLIGENCE, NEGLIGENCE, NEGLIGENT MISREPRESENTATION, AND DECLARATORY RELIEF** |
| | ) | |
| URISH POPECK & CO., LLC, | ) | |
| 3 GATEWAY CENTER, SUITE 2400 | ) | |
| PITTSBURGH, PA 1522 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | **(JURY DEMAND ENDORSED HEREON)** |
| | ) | |
| | ) | |

Plaintiff Ohio Investors 2017, LLC ("Plaintiff" or "Ohio Investors"), by and through counsel, for its Complaint against Defendant Urish Popeck & Co., LLC ("Defendant" or "Urish"), states as follows:

### NATURE OF THE DISPUTE

1. This action seeks damages for the malpractice and negligence committed by Urish with respect to its determination of the fair market value of the Class G Units of Ohio Investors as of December 28, 2019 (the "Valuation Date"). Despite its numerous representations that it was qualified and experienced enough to perform the engagement, the valuation prepared by Urish contains fundamental flaws, including but not limited to the fact that Urish wrongly assumed that Ohio Investors was capitalized with 7.5 million of cash as of the Valuation Date. Yet, as demonstrated in the due diligence materials sent to Urish, as of December 28, 2019, Ohio Investors had zero cash assets. Urish's negligent conduct and failure to follow industry standards caused it to make egregious mistakes in preparing the valuation of Ohio Investors' Class G Units, amounting to professional malpractice. Ohio Investors seeks to recover the damages caused by the

malpractice, negligence, and misrepresentations of Urish and a declaration by the Court of the error contained in the valuation.

## PARTIES AND JURISDICTION

2. Plaintiff Ohio Investors 2017, LLC is an Ohio limited liability company with its principal place of business in Toledo, Ohio. Ohio Investors was formed for the purpose of obtaining medical marijuana licenses in the State of Ohio through its ownership in GTI Ohio, LLC.

3. The members of Ohio Investors 2017, LLC are GTI Core, LLC, a Delaware limited liability company, and George Management Ltd., an Ohio limited liability company.

4. Ohio Investors 2017, LLC owns 100% of GTI Ohio, LLC.

5. As of August 27, 2019, GTI Ohio, LLC holds a Cultivator Level I *provisional* license from the Ohio Department of Commerce Ohio Medical Marijuana Control Program.

6. Even after receiving a provisional license, owners must take several steps prior to operating a cultivation facility. For example, owners must capitalize the business, buildout the facility, and pass a number of inspections prior to receiving a Certificate of Operation, which is required to operate the cultivation facility.

7. Upon information and belief, Defendant Urish Popeck & Co., LLC is a Pennsylvania limited liability company with its principal place of business in Pittsburgh, Pennsylvania.

8. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because Ohio Investors and Urish (upon information and belief) are of diverse citizenship, and the amount in controversy exclusive of interest and costs exceeds $75,000.

9. Venue is proper in this district under 28 U.S.C. § 1391 as Ohio Investors is an Ohio limited liability company and a substantial part of the events or omissions giving rise to the claim occurred in Ohio.

## BACKGROUND FACTS

### Urish is Retained by Ohio Investors 2017

10. On June 7, 2019, GTI Core LLC ("GTI Core") and George Management, Ltd. ("George Management"), the two members of Ohio Investors 2017, entered into an Amended and Restated Operating Agreement for Ohio Investors 2017, LLC (the "Operating Agreement").

11. Ohio Investors is comprised of two divisions: (1) the dispensary/processing division and (2) the grow/cultivation division (the "Growth Division"). Ohio Investors' equity is divided into two classes: Class A Units and Class G Units ("G Units").

12. The G Units represent Ohio Investors' ownership of—including a share of profits, losses, cash distributions, royalties, and other attributable economic rights—the Growth Division.

13. Section 9.05 of the Operating Agreement provides a method by which George Management can put (sell) all of its G Units to GTI Core.

14. Once George Management exercises its option, Section 9.05(b) of the Operating Agreement lays out the process for determining the fair market value of the G Units.

15. GTI Core and George Management engaged in the process detailed in the Operating Agreement, and both entities hired valuation firms to conduct an initial valuation.

16. The valuations reached by the two appraisers were different in material respects, namely that the firm retained by George Management assumed that the dispensary/processing and grow/cultivation, two completely different aspects of the business, would occur in the same facility. This assumption is based on a false assumption.

3

17. Section 9.05(b) of the Operating Agreement specifically contemplated a situation where the two retained firms reach materially different valuations, and it provided that a third qualified appraiser was to be engaged to resolve the valuation difference.

18. The third appraiser retained was Urish.

19. The engagement letter with Urish was signed by the two members of Ohio Investors and Urish on April 16, 2020.[1]

20. Pursuant to the engagement letter between Ohio Investors and Urish, Urish was to determine the fair market value of the G Units of Ohio Investors 2017, LLC as of the Valuation Date.

**Urish Markets Itself as a Preeminent Firm with Technical Expertise**

21. Urish holds itself out as a professional accounting firm that is capable and experienced.

22. On its website, Urish boasts: "Urish Popeck clients benefit from resources and capabilities that in many respects are comparable to the top national and global firms. Our clients receive the best of both worlds: national caliber technical expertise and supporting resources delivered by hands-on partners and senior staff, along with good value for fees."[2]

23. Urish's website also boasts that it has been a member of the AICPA's SEC Practice Section/Center for Audit Quality since its inception in the 1970s, and Urish held itself out to Ohio Investors as possessing the professional competence to perform the valuation.[3]

---

[1] A true and accurate copy of the engagement letter between Ohio Investors and Urish will be made available to the Court, as needed, for in camera review but is not attached to this pleading due to confidentiality concerns.

[2] *Why Urish Popeck*, https://www.urishpopeck.com/ (accessed July 27, 2020).

[3] *See About Us*, https://www.urishpopeck.com/about-us/ (accessed July 27, 2020).

24. And the website also states that Urish is an independent member of BDO Alliance USA, "a nationwide association of independently owned local and regional accounting, consulting and service firms with similar client service goals" as claimed by Urish.[4]

**Urish Promises to Issue a Reliable Report Consistent with Professional Standards**

25. Per the engagement letter, Urish promised to prepare its valuation in accordance with Revenue Ruling 59-60, which requires "reasonable knowledge of relevant facts."[5]

26. In its engagement letter, Urish also represented that it would "follow generally accepted appraisal standards promulgated by the American Society of Appraisers and the American Institute of Certified Public Accountants ("AICPA") for business valuations and the *Uniform Standards of Professional Appraisal Practice*."[6]

27. AICPA issues a Code of Professional Conduct[7] which requires certain responsibilities of its members including that "*members* should exercise sensitive professional and moral judgments in all their activities."[8]

28. Further the Code contemplates disputes arising and states that "[i]n resolving those conflicts, *members* should act with integrity, guided by the precept that when *members* fulfill their responsibility to the public, *clients'* and employers' interests are best served."[9]

---

[4] *See id.*

[5] *See supra*, fn. 1.

[6] *See id.*

[7] A copy is attached hereto as Exhibit 1.

[8] *See* Exhibit 1, AICPA Code of Professional Conduct (2014), at *Principles of Professional Conduct 0.300.010(.01)*.

[9] *Id.*, at 0.300.030(.03).

5

29. And the Code further contemplates that "[t]hose who rely on *members* expect them to discharge their responsibilities with integrity, objectivity, due professional care, and genuine interest in serving the public."[10]

30. One of AICPA's principles is "Due Care," which says, "[m]embers should be diligent in discharging responsibilities to clients." Members are required to "discharge professional responsibilities with competence and diligence." Further, "[d]iligence imposes the responsibility to render services promptly and carefully, to be thorough, and to observe applicable technical and ethical standards." [11]

31. And the Code states that "[e]ach *member* should undertake to achieve a level of competence that will assure that the quality of the *member's* services meets the high level of professionalism required by these Principles."[12]

32. Urish represented to Ohio Investors not only that it was competent to perform the valuation but also that it would communicate with Ohio Investors, or its members' representatives, throughout the valuation process.

33. Specifically, the engagement letter contemplated that Urish wanted to ensure that "all parties are able to provide input and feedback" so that "answers are not biased" in reaching its conclusion regarding the fair market value of the G units. Further, Urish acknowledged that it had "unrestricted access to the respective Company's management, its agents, and representatives during the course of the engagement."[13]

---

[10] *Id.*, at 0.300.030(.04).

[11] *Id.*, at 0.300.060(.05)-(.06).

[12] *Id.*

[13] *See supra*, fn. 1.

34. In addition, the engagement letter states that Urish would perform its appraisal consistent with the requirements of the Operating Agreement, which states that only a "Qualified Appraiser" could be selected, which is "a regionally or national recognized appraisal company, valuation firm or investment bank with substantive experience in valuing marijuana cultivation businesses in Ohio or surrounding jurisdictions."

35. In reliance on all of these representations and commitments, Urish was the appraiser selected to determine the fair market value of the G Units of Ohio Investors.

**Urish Fails to Exercise Reasonable Care in the Preparation of its Valuation Report and its Report is Fundamentally Flawed**

36. Urish issued its valuation report on May 28, 2020 (the "Valuation Report").

37. Urish relied exclusively on the Discounted Cash Flow ("DCF") method, which in its own words "is a measure of the company's total capitalization including both debt and equity." By its own admission, capitalization is of utmost importance in determining the fair market value of any business.

38. During the preparation of the Report, Urish failed to make any contact with company management or request additional documentation or information from either George Management or GTI Core, as contemplated in the engagement letter.

39. Urish likewise failed to complete a site tour, in addition to failing to do a number of other things that a normal appraisal process would entail.

40. Urish clearly rushed to prepare its report and failed to perform adequate due diligence.

41. Proof of its lackluster approach is on page 21 of its Valuation Report, which says that "[i]t is understood that this report is intended to assist PNC in the fulfillment of its fiduciary purposes, is designed for uses internal to PNC and for no other purpose."

7

42. This Valuation Report has nothing to do with PNC and shows that Urish failed to exercise reasonable care.

43. Failing to perform adequate due diligence, or address the discrepancies between the two prior valuations performed, which could have been performed by a site visit to the Growth Division or discussions with the members or management team, Urish determined the fair market value of the G Units was $21,340,000.

44. Based on a review of the Valuation Report, it is self-evident that Urish did not have "reasonable knowledge of relevant facts" and that it failed to involve Company management in the process of determining fair market value.

45. As a result, the Valuation Report contains fundamental flaws, including but not limited to, Urish's improper assumption that Ohio Investors was capitalized with $7,500,000 cash as of the Valuation Date.

46. Yet, as demonstrated in the due diligence materials sent to Urish, as of December 28, 2019, the G Units, in other words, the Growth Division, had zero cash assets.

47. As of the Valuation Date, the only asset possessed by the G Units, or Growth Division, was a *provisional* cultivation license issued by the Ohio Department of Commerce.

48. The G Units, which govern and will operate Ohio Investors' Growth Division, had no cash, term sheets, capital commitments from its members, third parties or lenders for operation of its provisional medical marijuana cultivation license as of the Valuation Date.

49. This fact is evident in a number of documents that were made available to Urish in the data room, documents as explicit as stating, "there is no existing capital available to fund the construction and buildout" and "the owners of the G units will be fully responsible for capitalizing all funds necessary to operationalize the Cultivation License and build out the facility."

8

50. There is no question Urish's DCF model lists an incorrect starting capital amount and as a result is off by a material amount.

51. For this reason alone, the Valuation Report is fundamentally flawed and unreliable.

52. GTI Core, as the Managing Member of Ohio Investors 2017, raised this issue with Urish immediately.

53. Despite repeated efforts by Ohio Investors, Urish has failed to correct its error, participate in communications with counsel and the principals, and acted completely inconsistent with the level of care and diligence it promised at the outset, and which Ohio Investors relied on.

**George Management Demands Payment in Accordance with Urish's Report**

54. George Management, exercising its put right under Section 9.05 of the Operating Agreement, relied on Urish's flawed report and immediately demanded a payout using the flawed valuation price.

55. Ohio Investors was forced to reach a resolution with George Management, for a value well in excess of the fair market value of the G Units. Had Urish correctly arrived at a determination of fair market value, this dispute would have never arisen.

56. Ohio Investors had no choice but to resolve the dispute with George Management to avoid further litigation, which would not only require significant time and expense but also threaten the ability of Ohio Investors to continue operations and jeopardize its ability to obtain a permanent license from the Ohio Department of Commerce Ohio Medical Marijuana Control Program to operate as a cultivation business Certificate of Operation.

**COUNT I – MALPRACTICE/PROFESSIONAL NEGLIGENCE**

57. Ohio Investors incorporates by reference the allegations in the preceding paragraphs as if fully rewritten herein.

9

58. Urish is a professional accounting firm and agreed to conduct its valuation in accordance with Revenue Ruling 59-60 as well as AICPA.

59. Urish represented itself as possessing the professional competence to perform the valuation and owed Ohio Investors the common law duty to exercise due care, diligence, and prudence in the discharge of its professional obligations.

60. Urish deviated from the applicable standard of care in preparing the Valuation Report and failed to exercise its duties of care, diligence and prudence in the discharge of its professional obligations, including but not limited to, determining the fair market value of the G Units.

61. Further evidence of its malpractice, in the course of its engagement, Urish failed to make any inquiry of company management, take a site visit to the proposed facility involved in the dispute, or resolve the discrepancies in the prior valuations, which it should have done in the exercise of ordinary care, and had it done so, the error would not have occurred.

62. Had Urish properly discharged its duties of professional due care, it would have discovered its error and determined the true value of the G Units of Ohio Investors at the time George Management exercised its put rights.

63. And the professional accounting standards requires Urish to act with integrity and competence, among other things, which has not been done.

64. As a direct and proximate result of Urish's malpractice/professional negligence, Ohio Investors was damaged in an amount to be proven at trial, an award of prejudgment and post-judgment interest, reasonable attorneys' fees and costs, and all other relief as the Court deems just and proper.

## COUNT II – GROSS NEGLIGENCE

65. Ohio Investors incorporates by reference the allegations in the preceding paragraphs as if fully rewritten herein.

66. Urish owed Ohio Investors a duty to use reasonable care in the preparation of the Valuation Report and in trying to resolve this dispute.

67. Urish agreed to abide by Revenue Ruling 59-60, AICPA, and other accounting standards and codes of conduct.

68. The observance of such duties would have prevented or eliminated the incorrect valuations of the G Units and allowed Urish to correct its error in a professional manner.

69. Urish failed to perform its duty in reckless disregard for the consequences of its actions and its report is an extreme departure from the standard of care in the industry.

70. As a direct and proximate result of Urish's gross negligence, Ohio Investors was damaged in an amount to be proven at trial, an award of prejudgment and post-judgment interest, reasonable attorneys' fees and costs, and all other relief as the Court deems just and proper.

## COUNT III – NEGLIGENCE

71. Ohio Investors incorporates by reference the allegations in the preceding paragraphs as if fully rewritten herein.

72. Urish owed Ohio Investors a duty to use reasonable care in the preparation of the Valuation Report and in trying to resolve this dispute.

73. Urish agreed to abide by Revenue Ruling 59-60, AICPA, and other accounting standards and codes of conduct.

74. The observance of such duty would have prevented or eliminated the incorrect valuations of the G Units and allowed Urish to correct its error in a professional manner.

75. Urish breached its duty to Ohio Investors and failed to exercise reasonable care.

76. As a direct and proximate result of Urish's negligence, Ohio Investors was damaged in an amount to be proven at trial, an award of prejudgment and post-judgment interest, reasonable attorneys' fees and costs, and all other relief as the Court deems just and proper.

### COUNT IV – NEGLIGENT MISREPRESENTATION

77. Ohio Investors incorporates by reference the allegations in the preceding paragraphs as if fully rewritten herein.

78. Urish represented that it was capable, qualified and experienced to perform the valuation and would do so in accordance with industry standards, including AICPA standards.

79. Urish was aware that Ohio Investors would rely on its representations and intended to induce Ohio Investors to rely on its representations.

80. Urish made false representations under circumstances in which Urish ought to have known the falsity of its representations.

81. Ohio Investors did justifiably rely on Urish's representations.

82. As a direct and proximate result of Urish's negligent misrepresentation, Ohio Investors was damaged in an amount to be proven at trial, an award of prejudgment and post-judgment interest, reasonable attorneys' fees and costs, and all other relief as the Court deems just and proper.

### COUNT V – DECLARATORY RELIEF

83. Ohio Investors incorporates by reference the allegations in the preceding paragraphs as if fully rewritten herein.

84. Ohio Investors requests that the Court declare that the Valuation Report contains a flaw in that Ohio Investors was not capitalized as of the Valuation Date.

85. The parties dispute whether the Valuation Report contains an error.

86. Justiciable controversies exists between the parties that meets the requirements of the Declaratory Judgment Act.

87. The Court's resolution of this dispute will resolve the uncertainty between the parties to this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Ohio Investors requests judgment from the Court against Urish and awarding it:

A. Compensatory damages in an amount to be proven at trial, but no less than the amount of the error contained in the Valuation Report;

B. Attorneys' fees, costs, and expenses;

C. Pre and post-judgment interest; and

D. For any other and further relief which the Court may deem appropriate.

## **JURY DEMAND**

Plaintiff Ohio Investors 2017 LLC requests a trial by jury of all issues so triable under Federal Rule of Civil Procedure 38.

Dated: September 9, 2020	Respectfully submitted,

*/s/ Chelsea R. Mikula*
Chelsea R. Mikula (0086453)
Emily Jaye Johnson (0099006)
Tucker Ellis LLP
950 Main Avenue
Suite 1100
Cleveland, OH 44113-7213
Tel:	216.592.5000
Fax:	216.592.5009
E-mail:	chelsea.mikula@tuckerellis.com
	emily.johnson@tuckerellis.com

*Attorneys for Plaintiff Ohio Investors 2017 LLC*